IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| LAURIE E. PEARSON, | ) | Civil Action No. 3:06-0447-MBS-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

In March 2003, Plaintiff applied for DIB. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held July 22, 2005, at which Plaintiff appeared and testified, the ALJ issued a decision dated October 7, 2005, denying benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was forty years old at the time she alleges she became disabled and forty-three years old at the time of the ALJ's decision. She has a bachelor's degree in sociology and past relevant work as an insurance agent and social worker. Plaintiff alleges disability since February 2003, due to back pain, fibromyalgia, osteoarthritis, chronic sinusitis and bronchitis, endometriosis, hypertension, depression, anxiety, panic disorder, and insomnia.

The ALJ found (Tr. 21-22):

1. The claimant met the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 236(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's fibromyalgia, degenerative disc disease, osteoarthritis, hypertension, neuropathic foot pain, anxiety, and depression are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix I, Subpart P, of Regulation No. 4.

5. The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to perform work with restrictions requiring no lifting, carrying, and/or handling of more than carrying 20 pounds occasionally, 10 pounds frequently; no prolonged sitting, standing, or walking with the ability to change positions at the workstation every 30 minutes; and no exposure to temperature extremes or humidity because of her fibromyalgia, degenerative disc disease, osteoarthritis, hypertension, and neuropathic foot pain. Because of her anxiety and depression, she would be limited to routine, repetitive tasks involving simple 1-2 step instructions (which I define as requiring few decisions) in a low stress environment and no public contact.

7. The claimant is unable to perform any of her past relevant skilled work (20 CFR § 404.1565).

8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 404.1563).

9. The claimant has "more than a high school education" (20 CFR § 404.1564).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 CR § 404.1567).

12. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include the unskilled, light jobs of office helper, 29,400 jobs in the local economy, 1,600,000 nationally; inspector, 3,100 jobs in the local economy, 625,000 nationally; and mail clerk, with 1,370 jobs in the local economy and 200,000 nationally.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

On December 17, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on February 14, 2006.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ's decision is not supported by substantial evidence; (2) the ALJ erred in disregarding the opinion of Plaintiff's treating physician; and (3) the ALJ failed to properly evaluate Plaintiff's credibility.

A.   Substantial Evidence

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's determination that Plaintiff could perform the physical requirements of a significant range of light work (with restrictions of no prolonged sitting, standing, or walking and the ability to change positions at her workstation every thirty minutes) despite her impairments is supported by substantial evidence. Plaintiff's impairments were treated primarily by Dr. Leslie Stuck, an internist. Tr. 160-230. Dr. Stuck conservatively treated Plaintiff for various impairments including hypertension, fibromyalgia, degenerative disc disease, and osteoarthritis.

Although Plaintiff suffers from hypertension, it was generally controlled with medication. See Tr. 161-163, 172, 282, and 286. If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986).

Despite Plaintiff's complaints of musculoskeletal impairments, physical examination revealed good motor strength in Plaintiff's extremities, good pulses, and negative straight leg testing. In April 2003, Plaintiff complained of back pain and left leg swelling. Examination, however, revealed that Plaintiff had good arterial pulses, a trace of left ankle edema, negative straight leg testing, and full motor strength. Tr. 167. On May 29, 2003, Plaintiff reported that acupuncture was helping her pain tremendously. Examination revealed a trace of ankle edema, good extremity pulses and motor strength, and negative straight leg testing. Tr. 166. On July 15, 2003, Plaintiff told Dr. Stuck that she was feeling much better. Dr. Stuck noted that Plaintiff's depression and pain had improved and she had excellent blood pressure and no edema. Tr. 163. In February 2004, Plaintiff complained of intermittent pain, lack of energy, and dizziness and shortness of breath upon bending. Dr. Stuck wrote that Plaintiff was exercising, felt "much better" with diminished pain and controlled hypertension. Tr. 161. On May 28, 2004, Dr. Stuck noted that Plaintiff was "doing better" and her myofascial pain had improved. Plaintiff reported that she was getting massage and chiropractic therapy and exercising, but had sinus congestion and abdominal bloating. Tr. 286.

Objective medical testing also supports the ALJ's decision. X-rays of Plaintiff's thoracic spine in December 2001 only showed mild scoliosis and mild degenerative changes. Tr. 212. X-rays and a spinal MRI in March 2003 revealed only "minimal findings and a slightly bulging disc that was not felt to be of any clinical significance." Tr. 204-205. Plaintiff complained of problems with her left lower extremities. X-rays of her left foot in November 2004, however, were normal. Tr. 280-

281. In July 2005, x-rays of Plaintiff's left hip were negative. Tr. 291. A chest x-ray and cardiac examination in May 2003 were normal. Tr. 166, 208.

The findings of other examining physicians also support the ALJ's decision. From July 17 to 30, 2002, Plaintiff was treated for shoulder pain by Dr. William Felmly, an orthopaedist. Tr. 114-115. In July 2002, an MRI of Plaintiff's shoulder did not show any evidence of obvious rotator cuff pathology. It revealed "[a] little but of tendinitis but [was] otherwise benign." Tr. 114. Dr. Felmly stated on July 25, 2002 that Plaintiff could go back to her routine activities and duties and she was released back to work as of that Monday. Plaintiff underwent physical therapy at Columbia Rehabilitation Clinic from August 5 to September 4, 2002 for her shoulder. Tr. 116-121. Upon discharge, it was noted that Plaintiff's pain in her left shoulder was 99% better, and her active range of motion in her left shoulder was within normal limits without pain. Tr. 116.

In February 2005, Plaintiff was examined by Dr. Deanna Constable, an orthopaedist, for bilateral foot pain. Tr. 275-276. Examination showed well-maintained pulses bilaterally, no swelling, and tenderness to light touch with no specific bony point tenderness. X-rays revealed no fractures, bunions or deformities; no bony reactive or destructive changes; and well-maintained bony relationships. Tr. 276-277. Bone scans showed a slight increased uptake and a "hot spot" on Plaintiff's right foot, which was no more tender than anywhere else. Dr. Constable opined that Plaintiff's foot pain was likely "mechanical or arthritic" in nature, prescribed an anti-inflammatory medication, and recommended that Plaintiff wear supportive tennis shoes. Tr. 275-277.

Although Plaintiff suffered from endometriosis, she underwent a successful hysterectomy which relieved her related symptoms. See Tr. 273, 308. Dr. Stuck noted in April 2005 that Plaintiff had "recovered nicely." Tr. 282.

The ALJ's determination that Plaintiff had the physical residual functional capacity ("RFC") to perform light work is also supported by the findings of a State agency medical consultant. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). In June 2003, State agency physician Dr. Darla Mullany reviewed Plaintiff's medical records and concluded that Plaintiff's low back and musculoskeletal pain were her only severe physical impairments. Tr. 236. Dr. Mullany completed a physical RFC assessment in which she opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand/sit or walk for about six hours in an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, or crawl. Tr. 254-261.

The ALJ's determination that Plaintiff, despite her mental impairments, could perform routine, repetitive tasks involving simple one-to-two step instructions (defined as requiring few decisions) and a low stress environment with no public contact is supported by substantial evidence. From October 1999 to December 2001, Plaintiff was treated by Dr. A. Sale Estofano, a psychiatrist, for anxiety and depression. Tr. 110-112. There is no indication that Dr. Estofano placed any restrictions on Plaintiff's ability to work. Dr. Stuck prescribed medications for anxiety and depression. In March 2002, Dr. Stuck noted that Plaintiff's depression was stable. Tr. 175. Plaintiff was prescribed various medications for anxiety and depression by Dr. Stuck. It was reported that her depression was better in July 2003 (Tr. 163) and Lexapro was helping in November 2003 (Tr. 162). Plaintiff denied depressive symptoms in April 2005 (Tr. 282). At the hearing, Plaintiff testified that she was not seeing a psychiatrist. Tr. 307. She stated that she had not had a panic

attack since starting Klonopin in 1997 or 1998 and her medications helped her anxiety symptoms. Tr. 312, 321-323.

Plaintiff was examined by Dr. Deanna S. McNeil, a psychiatrist, in July 2003. Dr. McNeil noted that Plaintiff had no previous psychiatric hospitalizations and was not currently receiving psychiatric care. Plaintiff reported to Dr. McNeil that her panic attack symptoms were under good control with medication. Examination revealed that Plaintiff was fully oriented and had normal psychomotor activities; no difficulties in communicating; a depressed and intermittently anxious mood with congruent affect; and an inability to think abstractly, but with no hallucinations, delusions, or suicidal ideation. Dr. McNeil diagnosed Plaintiff with panic disorder with agoraphobia, mood and pain disorder secondary to a general medical condition, and dysthymia. Tr. 153-156.

The ALJ's decision is also supported by the findings of State agency psychologist Dr. Edward Waller. In August 2003, Dr. Waller completed a mental RFC assessment in which he opined that Plaintiff was "not significantly limited" or was "moderately limited" in all areas of work-related mental functioning. Tr. 236-239. In a psychiatric review technique form, Dr. Waller found that Plaintiff had moderate limitations in her activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. He found that Plaintiff had no extended episodes of decompensation. Tr. 240-253.

B.  Treating Physician

Plaintiff alleges that the ALJ erred in disregarding the opinion of her treating physician, Dr. Stuck. On February 6, 2004, Dr. Stuck wrote:

> [Plaintiff] suffers from hypertension, fibromyalgia, chronic myofascial pain, degenerative osteoarthritis, and degenerative disc disease. She has been treated with medications, physical therapy, massage therapy, and unconventional therapies, such

>   as acupuncture. She continues to be debilitated due to pain and fatigue. Subsequent
>   to her medical problems she is unable to maintain employment at this time.

Tr. 160. The Commissioner contends that the ALJ properly considered Dr. Stuck's opinion.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

The ALJ's decision to discount Dr. Stuck's February 2004 opinion that Plaintiff was "unable to maintain employment" is supported by substantial evidence. An ALJ is not bound by a conclusory opinion of disability or entitlement to benefits, even when rendered by a treating physician, since the

issue of disability is the ultimate issue in a Social Security case and that issue is reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984). Further, as noted by the ALJ, Dr. Stuck's opinion did "not consider alternative work" and did not "comport with [Dr. Stuck's] own treatment notes which showed only minimal clinical/objective findings and normal neurological examination" (Tr. 17). See Craig, 76 F.3d at 590 (lack of objective findings supported ALJ's decision). Dr. Stuck's opinion is not supported by her findings that Plaintiff's hypertension was generally controlled by medication and by Dr. Stuck's conservative treatment of Plaintiff's fibromyalgia, degenerative disc disease, and other ailments. Prior to her February 2004 opinion, the only restrictions imposed by Dr. Stuck were that Plaintiff should avoid lifting, pushing, and pulling due to her shoulder problems. Tr. 171. Plaintiff's shoulder pain, however, resolved with physical therapy. Tr. 116-120. Dr. Stuck's February 2004 opinion is not supported by the findings of the other treating and consultative physicians. Further, no other treating or examining physician imposed any restrictions on Plaintiff's ability to work or found Plaintiff was disabled due to her conditions.

    C.    <u>Credibility</u>

Plaintiff appears to allege that the ALJ failed to properly evaluate her pain and credibility. The Commissioner contends that substantial evidence supports the ALJ's credibility findings.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a Plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's credibility determination is supported by substantial evidence including the medical records, as discussed above. The ALJ's decision is also supported by Plaintiff's activities of daily living. Plaintiff testified that she could lift fifteen to twenty pounds, walk her dog one-fourth of a mile two to three times a day, and sit for fifteen to twenty minutes. Tr. 308-309, 325. She testified that she dressed, fed, and bathed herself; shopped; swam almost daily; checked her e-mail; typed letters; performed Internet research; watched television; listened to music; read; drove a car; cleaned her bathrooms; made her bed; laundered clothes; visited friends and neighbors, and went out to restaurants. Tr. 302, 307-313, 319-321, 325. Additionally, Plaintiff testified that she stopped working at her last job because it was temporary and it "ran out" (Tr. 299, 206, see also Tr. 54). See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). This testimony is inconsistent with her previous

11

report to Dr. McNeil that she was terminated from her last job. Tr. 153. Although Plaintiff reported side-effects from her medications, there is no evidence that she reported these side-effects to her physicians. See Richmond v. Shalala, 23 F.3d 1441, 1443 (8th Cir. 1994)(although claimant complained of side-effects at the hearing, the court upheld the ALJ's finding that those complaints were not credible because there was no medical evidence that the claimant had complained to doctors about significant side effects). Plaintiff argues that she reported dizziness with bending in February 2004, but there is no indication that this was caused by medications, and Plaintiff reported that her dizziness was relieved by standing upright (Tr. 161).

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a Plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

Joseph R. McCrorey
United States Magistrate Judge

October 16, 2006
Columbia, South Carolina